IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

                                   :     Criminal No. 0315 3:20CR00006-002

      vs.                      :

                                   :     Electronically Filed

AMANDA NICHELLE DOWNS,     :
      Defendant.             :

**SENTENCING MEMORANDUM**

TO:     THE HONORABLE STEPHANIE L. HAINES, JUDGE OF SAID COURT:

COMES NOW the Defendant, Amanda Nichelle Downs, by and through counsel, Arthur T. McQuillan, Esquire,  pursuant to the Local Rules for the Western District of Pennsylvania, the Federal Rules of Criminal Procedure, and Order of this Court, and hereby files this Sentencing Memorandum, requesting that this Court impose a sentence "sufficient, but not greater than necessary" to achieve individual accountability and just punishment. 18 U.S.C. §3553(a). *U.S. v. Grober*, 624 F.3d 592 (C.A.3 (N.J.), 2010). For the reasons set forth herein, it is submitted that the lowest term of incarceration of 17 years, as set forth in the plea agreement, is sufficient, but not greater than necessary to achieve the sentencing objectives of Title 18, United States Code, §3553(a).

**Introduction:**

Ms. Downs entered her plea to Counts 1 and 2 of the Indictment on February 10, 2022, accepting responsibility for her role in Production and Attempted Production of Material Depicting the Sexual Exploitation of a Minor in violation of Title 18, United States Code, §2251(a) and 2251(e) and 2.

The maximum term of imprisonment at each of counts 1 and 2 is 360 months. Pursuant to the plea agreement reached under Rule 11(c)(1)(C), the parties stipulated that the appropriate sentence was no less than 17 years but no more than 20 years. (PSR ¶¶ 77,78).   For the reasons that follow, the Court is request sentence Ms. Downs to no more than 17 years.

**Compliance with Local Rule 32:**

1)      Counsel for the Defendant, Amanda Downs, received the initial Presentence Investigation Report (PSR) on April 26, 2022.  Following review of the document with Ms. Downs, counsel communicated with United States Probation Officer Michael C. Howard and Assistant United States Attorney Maureen Sheehan-Balcon regarding the contents of the Presentence Investigation Report; after which minor changes were implemented.

2)      The Defendant gave timely notice that she adopted the findings of the initial Presentence Investigation Report, and the final Presentence Investigation Report was filed on May 18, 2022, the government having no objections to its factual content.

3)      The Defendant will ask the Court to consider sentencing Ms. Downs to the low end of 17 years as provided in the plea agreement under Rule 11(c )(1)(C), taking into consideration the sentencing factors set forth in 18 U.S.C. §3553(a).

**Federal Sentencing Overview:**

After "consulting and correctly determining the sentencing range prescribed by the Sentencing Guidelines … [t]he court must then impose a reasonable sentence in light of the factors enumerated in 18 U.S.C. 3553(a)." *United States v. McBride*, 511 F.3d 1293 (11th Cir 2007). Among the factors which the sentencing Court "shall consider" under Section 3553(a)(1) are "the

2

nature and circumstances of the offense and the history and characteristics of the defendant" and under (a)(2) "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner."

The starting point in federal sentencing is a properly calculated sentencing guidelines range, as the sentencing guidelines establish the "initial benchmark" in determining an appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The guidelines, however, are not the ending point in federal sentencing. Following *United States v. Booker*, 543 U.S. 220 (2005), the guidelines are advisory. District Courts "may not presume that the Guidelines range is reasonable." *Gall v. United States,* 552 U.S. at 50,  but should consider the guidelines as one factor in arriving at a fair sentence. A sentencing court may vary from the guidelines based on a categorical disagreement with a particular guideline that does not accurately reflect the 18 USC Section 3553(a) sentencing factors, or it may vary because given the individual characteristics of a particular case, the guidelines recommend an excessive sentence. *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Tomko*, 526 F.2d 571 (3rd Cir. 2009) (*en banc*). A sentencing court must make an independent determination of an appropriate sentence based on all of the 18 U.S.C. Section 3553(a) factors without any "thumb on the scale favoring a guideline sentence," *United States v. Sachsenmaier*, 491 F. 3d 680, 685 (7th Cir. 2007) and keeping in mind that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider

every person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

**Federal Child Pornography Sentencing Guidelines:**

In 2012, the United States Sentencing Commission explained that the guideline "fails[s] to differentiate among offenders in terms of their culpability." U.S.S.C. Sentencing Commissions Report to the Congress: Federal Child Pornography Offenses, Page 323 (2012).

The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." U.S.S.C. Sentencing Commissions Report to the Congress: Federal Child Pornography Offenses, Page 321 (2012).

The Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines." *Id.,* at 322.

In June 2021, the Department of Justice published its review of U.S.S.G. §2G2.2 relative to non-production offenses.  In October of 2021, it published a similar report focusing on production offenses. It noted that while the Commission's 2012 Child Pornography Report recommended that Congress authorize the Commission to revise §2G2.2 to eliminate outdated guideline enhancements and more fully account for relevant aggravating factors, Congress has not passed legislation amending either the statutory penalty scheme or the directives to the Commission. The

4

guideline, therefore, remains largely intact. The report essentially concluded that U.S.S.G. §2G2.2 no longer effectively differentiates among offenders in terms of either the seriousness of the offense or culpability of the offender.

In 2019, over three-quarters of child pornography defendants (78.0%) were convicted under a statute carrying at least a 15-year mandatory minimum penalty. A majority of child pornography production offenders, however, received a variance below the applicable guideline range (57.2% of the 512 cases).   *Federal Sentencing of Child Pornography: Production Offenses*, United States Sentencing Commission (October 2021). The average guideline minimum for non-production child pornography offenders increased from 98 months in fiscal year 2005 to 136 months in fiscal year 2019.

Ms. Downs' plea agreement sets forth a 204 to 240 month sentencing range for the Court's consideration, as Ms. Downs is likely not a "typical" offender due to the nature of her conduct involving her own young child.[1]  Nevertheless, a 204-month sentence is warranted for the foregoing reasons as well as application of several of the sentencing factors set forth in U.S.S.G. §3553(a).

The Court is asked to consider Ms. Downs' individual circumstances, including her complete lack of any prior criminal history, to avoid imposing a sentence greater than necessary.

Ms. Downs demonstrated rehabilitation potential by showing early acceptance of responsibility through cooperating with law enforcement and assisting in the investigation of the

---

[1] The plea agreement, ¶ 7, states:  "Pursuant to Rule 11(c)(1)(C), the parties stipulate and agree that the appropriate sentence in this case, is a term of imprisonment of at least 17 years but not more than 20 years, a fine of up to $250,000, a life term of supervised release, a special assessment of $200, and restitution as determined by the Court."  Ms. Downs will also be subject to lifetime registration as a sex offender.

crime. She signed *Miranda* waivers on two occasions and consented to all interviews, as well as provided written consent to search her personal electronic devices and residence.  Ms. Downs' criminal conduct is attributed in part to self-esteem issues, wherein she was controlled and manipulated by her co-defendant boyfriend who married her during the course of the events of this case to continue to exert control over her.[2]  Co-defendant Jackson Curtis Martin exhibited characteristics of grooming not only the child victim in this matter but also held considerable influence over Ms. Downs during the time period involved in this case.  She was also, inexcusably, under the influence of methamphetamines during her conduct, but her remorse for her actions is sincere and genuine.

It is submitted that Ms. Downs truly desires to engage in "real, positive behavioral change," and demonstrate a "commitment to repair and rebuild" her life. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007),  *See United States v. Yeamen*, 248 F.3d 223, 228 (3d Cir. 2001).

The post-*Booker* reinstatement of judicial discretion requires the District Court to consider the personal background of the offender as well as the offense itself.  For the following reasons, Ms. Downs should be sentenced to no more than a 17-year sentence.

**Position of the Defendant with Respect to the Sentencing Factors (18 U.S.C. §3553(a))**

The PSR places Ms. Downs at a total offense level of 43 and a criminal history category of I, which results in a maximum sentencing term of 360 months' imprisonment as to each Counts 1 and 2, according to USSG §5G1.2(b) .  The impact of the plea agreement, however pursuant to

---

[2] The marriage took place on or about July 19, 2019.  Ms. Downs first initiated divorce proceedings through the Cambria County Prothonotary's office on September 15, 2020, and attempted again on January 8, 2021.  Undersigned counsel  recently ensured that the proceedings have been properly filed and process served, and service of the divorce complaint effectuated.

Rule 11(c)(1)(C), results in the Court's discretion to impose a term of imprisonment of at least 17 years, but not more than 20 years and a lifetime time of supervised release.  (PSR ¶¶ 77,78).

Defendant Amanda Downs respectfully submits for the Court's consideration the following 18 U.S.C. §3553(a) factors.

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant, §3553(a)(1);**

Ms. Downs' history and characteristics reveal that but for the illegal conduct relative to the crime of producing or attempting to produce images of child pornography, she has been a productive member of society.  She is now 35 years old with no criminal history record.

Nearly four years ago, Amanda Downs made the mistake of her life in filming her four-year-old daughter, as requested by Co-defendant Martin, on several occasions being sexually abused by Martin, who was her then-boyfriend.  Ms. Downs acknowledges responsibility for her misconduct.  The cell-phone videos were shared between Downs, Jackson, and a female third party friend (R.R.) in December 2018 and September 2019. The images were not transmitted by Ms. Downs to accessible social media or on an underground Internet website that would be available to the general pedophile population.  Ms. Downs  was arrested in Clearfield County on November 24, 2019 and has been incarcerated since that date. She has been in federal custody since March 20, 2020, relative to the above-captioned case. Clearfield County charges are still pending.

Ms. Downs entered her plea to Counts 1 and 2 of the Indictment on February 10, 2022, accepting responsibility for her role in Production and Attempted Production of Material Depicting the Sexual Exploitation of a Minor in violation of Title 18, United States Code, §2251(a) and

2251(e) and 2.

During her incarceration, Ms. Downs conveyed to undersigned counsel that she wants no contact or communication from Mr. Martin whatsoever.  Accordingly, undersigned counsel forwarded a letter to Mr. Martin's counsel reiterating her request.  Ms. Downs filed divorce proceedings in Clearfield County and Cambria County and believes it would be helpful to her closure and peace of mind to finalize her divorce.  Ms. Downs' efforts to cut off all contact with  Mr. Martin illustrates her acceptance of responsibility and attempts to atone for her conduct.

Relative to Ms. Downs' pending Clearfield County charges, court-appointed Attorney Patrick Lavelle indicates he is hopeful a global plea agreement may be implemented following sentencing in this case.  At this time, the Clearfield County case remains open although that matter is expected to resolve by way of entry of a guilty plea by Ms. Downs at a future date.

According to the PSR, Ms. Downs was diagnosed in 2013 with bipolar disorder, depression, anxiety, manic episodes, and Post Traumatic Stress Disorder.  Prior to her arrest in this case, she reports that she was engaged in outpatient mental health treatment in Phillipsburg, Pennsylvania, and was taking prescribed behavioral health medications as prescribed. (PSR ¶ 71).  At age 27, three to four years before she committed the underlying crimes, she began using methamphetamine daily.  She never participated in substance abuse treatment. (PSR ¶ 72).  Her judgment was seriously impaired while under the influence of methamphetamines.

A sizable percentage of individuals with substance use disorder also have co-occurring mental health disorders.  Data shows that dual diagnosis treatment will lead to more favorable

results for an individual than treating mental health separately from substance abuse.[3]  For Ms. Downs to have the best chance of success moving forward, it is important she receive appropriate treatment, as she has underlying, unaddressed, mental health issues. It is requested that the Court consider recommending Ms. Downs for the 500-hour federal drug treatment program.

It is also important to consider Ms. Downs' role in the offense.  She voluntary engaged in a candid interview in January 2022, with Department of Homeland Security Investigators.  She related that she was completely unaware of Mr. Martin's lascivious communications with the third-party female R.R. until she received discovery in this case. She stated that Martin tied her hands and legs to a couch until she agreed to do what he asked; she stated Martin had erectile issues and required exhibitionist and deviant behavior to achieve satisfaction; she stated that Martin was the dominant partner in their relationship and that "he would have done what he did with her daughter, anyway."  Downs had only partial visitation with her minor child during the relevant time period and stated she did not call the police because she did not think she would be believed, due to ongoing custody proceedings.

Ms. Downs had an unremarkable childhood.  She is proud of playing the flute in marching band and school concerts while in school in Glasgow, in the Altoona, Pennsylvania, school district, and reports that she was competitive in state competition in 2009. She attended a culinary arts program at the Greater Altoona CTC.  She attempted to attend the Pennsylvania College of Technology and Mount Aloysius College and the YTI Institute in Altoona but found studies difficult while tending to her aged grandmother. She developed PTSD and was diagnosed with other

---

[3] McGovern, et al, "Dual diagnosis capability in mental health and addiction treatment services." https://link.springer.com/article/10.1007/s10488-012-0449-1 (accessed June 4, 2022).

mental health disorders when her prior boyfriend attempted suicide in approximately 2011.  She

met her daughter's father in 2014 and gave birth to the child involved in this case, but the

relationship ended badly wherein custody proceedings were initiated.  Ms. Downs was granted

partial visitation with her daughter due to eviction issues. She began work at retail stores to support

her daughter.  In 2017, Ms. Down's own mother introduced her to Jackson Martin.  Ms. Downs

wrote to undersigned counsel:

> "I finally felt loved and cared for.  He even loved and cared for my daughter even
> though she was not his biologically his daughter.  I was so blinded by his love and
> affection that I didn't truly see that man Jackson actually was.  Both my relationship
> and marriage to Jackson was a complete lie."

Ms. Downs did not intend that the videos be disseminated commercially – which they were

not – but  she concedes she nonetheless "produced" child pornography, within meaning of the

statute prohibiting production of child pornography. Ms. Downs asks that the Court consider the

impact of all the surrounding facts and circumstances, including Jackson Curtis Martin's

domineering influence over her in fashioning a fair penalty.

**(2) the need for the sentence to reflect the seriousness of the crime, promote respect
for the law, provide just punishment, afford adequate deterrence, protect the public, and
provide the defendant with needed education or vocational training, medical care, and other
correctional treatment in the most effective manner, §3553(a)(2);**

Ms. Downs acknowledges the seriousness of her offenses.  She accepts that her illegal

conduct has impacted her entire life and will follow her the rest of her days:  the loss of her

employment, income, residence, self-esteem, family ties, emotional self-assurance, educational

opportunities, and her freedom.  Regardless of the length of sentence imposed, everything pales in

recognition of the stark reality that in essence Ms. Downs has lost the mother/daughter relationship

with her only child.

Because of Ms. Downs' lack of a past criminal history and aside from her aberrant behavior documented in this case for a 12-month period, she has been a good and productive tax-paying member of society; accordingly, a sentence of 17 years would be more than sufficient. Considering the facts of this case, the personal characteristics of Ms. Downs, i.e., taking responsibility immediately and providing waivers and admissions to law enforcement, the Defendant believes that 17 years of incarceration is sufficient to reflect the seriousness of this offense and to promote respect for the law and provide just punishment.

Ms. Downs has been continuously incarcerated since November 24, 2019, spanning the entire COVID-19 pandemic. Her incarceration has been incredibly difficult. Outbreaks among staff and inmates often caused, and still cause, strained conditions and increased anxiety. Lockdowns and quarantine are frequent events, and basic amenities are often curtailed.  Ms. Downs has been in federal custody since March 20, 2020.

With the proper educational classes and therapy at a federal correctional institution, it is averred that Ms. Downs will not be a threat to society upon release, particularly while being on lifetime sex offender registration requirements and probation supervision for life.

It is respectfully suggested that the 20-year term of incarceration the Government seeks is overly harsh. A fair and just term of incarceration will adequately protect society, continue to teach Ms. Downs the painful lesson which she has been learning for the past four years, provide needed sexual offender treatment, and serve as a fundamental and final deterrent to any future criminal conduct.

**(3) the kinds of sentences available, §3553(a)(3);**

The applicable statutory supervised release term is not less than five (5) years to life.

Table. USSG §5D1.2(b)(2). (PSR ¶ 80).

Sentencing Ms. Downs to 17 years is a "kind of sentence" that is certainly available to Ms.

Downs and is one that the Sentencing Commission believes is sufficient in these types of cases,

according to the recent 2021 Reports issued by the Commission referenced above. Because the

Sentencing Commission believes that the guideline sentences for child pornography cases is unfair

and are often not only implemented inconsistently, but "greater than necessary" this Court is asked

to grant Ms. Downs request for a 17-year term of imprisonment.

**(4) the applicable Guidelines sentence, §3553(a)(4);**

Ms. Downs, by pleading guilty to two counts of Production and Attempted Production of

Material Depicting the Sexual Exploitation of a Minor, has acknowledged her responsibility for

videotaping her minor child while, arguably, both mother and child were being sexually assaulted

by Jackson Martin. She has provided complete cooperation to the government in its investigation.

She entered into a plea agreement with the Government under Rule 11(c)(1)(C) and is aware that

the stipulated sentencing range for the Court's determination is between 17 and 20 years.

The PSR reflects that she is a Zone D offender with no criminal history points, but a total

offense level of 43, therefore her advisory sentence range, as calculated separately from the plea

agreement, is 360 months to life. (PSR ¶ 77).  Her sentence guideline calculation began with a

base level of 32, under USSG §2G2.1(a), before the addition to the following upward adjustment

specific offense-conduct enhancements:  (1) a four-level increase under §2G2.1(b)(1)(A) for

sexually explicit images of a minor under age 12, (2) a two-level increase for sexual contact involved in the offense under USSG §2G2.1(b)(2)(a); (3) a two-level increase under §2G2.1(b)(3) for knowing distribution; (4) a four-level increase under §2G2.1(b)(4)(b) for portraying a toddler, and (5) a two-level increase under §2G2.1(b)(5) because the minor involved was the Defendant's daughter.

§2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements— accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2.[4][5]

(5) the need to avoid unwarranted sentencing disparities, §3553(a)(6);

The Commission's concern that USSG §2G2.2 creates hidden, unwarranted disparities between similarly situated defendants is a reason for this Court to grant Ms. Downs' request for a 17-year sentence. Ms. Downs, a first-time offender, does not depend upon criminal activity for her livelihood. She engaged in several aberrant and appalling acts while under the influence of a controlling and domineering partner in combination with her self-report of being under the influence of methamphetamine.

The consequences of Ms. Downs' conduct thus far by engaging in such a serious crime

---

[4] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf

[5] It appears that the two four-level enhancements for conduct involving a minor under 12 years of age, as well as for conduct involving material that portrays an infant or toddler are redundant as a toddler is necessarily under the age of 12.  (PSR ¶ 30, 33).  This point may well be moot given the impact of the plea agreement in this case; however, the Court is asked to consider the potential double enhancement.

and a critical judgmental error, have impacted every aspect and every moment of her life. It has given Ms. Downs the impetus to address her mental and behavioral issues, and to engage in sexual offender treatment when provided that opportunity.  She  has completely lost her family and has suffered enormous anxiety, shame, remorse, and depression during the past four years, waiting in a state of uncertainty for closure of her federal and state criminal cases and the opportunity to atone for her crimes.  She wants nothing more than to put the terrible misconduct behind her and renew her life as a law-abiding and productive citizen.  Ms. Downs respectfully seeks leniency, submitting that the combination of factors comprises mitigating circumstances beyond those contemplated by the Commission.

**Conclusion:**

Ms. Downs does not minimize the seriousness of the offenses she committed. The "totality of circumstances" as set forth within this Memorandum, requires the proper exercise of *Booker* discretion in favor of granting Ms. Downs' request for a 17-year sentence.

The Court is asked to consider a sentence that is "sufficient but not greater than necessary," reflecting the gravity of Ms. Downs' conduct but also considering her positive qualities; her educational efforts and employment history, the efforts she has tried to make to address her behaviors, and the recognition by courts that the factual context of each case provides the sentencing court with specific insight as to each defendant, over and above advisory Guideline §2G2.2.  The Defendant seeks an Order directing credit for all time served in federal custody. According to the Criminal Case Information Sheet, Ms. Downs has been in continuous federal custody since March 20, 2020.

While adequately addressing her debt to society, correctional treatment for behavioral offender issues, and rehabilitative needs including the federal drug treatment and sexual offender treatment programs in the federal correctional system, the Defendant, Amanda Nichelle Downs, submits that an appropriate sentence of incarceration of 17 years will serve all such purposes, and not be greater than necessary.

Respectfully Submitted:


/s/ ___Arthur T. McQuillan_____
Counsel for Defendant Amanda Nichelle Downs

McQuillan Law Offices
206 Main Street
Johnstown, PA  15901
(814) 254-4560
PA ID 53514