IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AMANDA NICHELLE DOWNS<br>  a/k/a "Amanda Martin" | Criminal No. 3:20-cr-06 |

### UNITED STATES' SENTENCING MEMORANDUM

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Maureen Sheehan-Balchon, Assistant United States Attorney for said district, and submits this Sentencing Memorandum.

Upon consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), the government requests that the Court sentence Defendant Amanda Nichelle Downs, to the parties' agreed upon sentence range, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), as set forth in the plea letter.  Defendant documented the sexual abuse of a then three-to-five-year-old child. The United States respectfully submits that a sentence of 20 years' imprisonment, with a life term of supervised release, is a fair, just, and reasonable sentence that reflects the seriousness of Defendant's conduct.

### I.  FACTUAL AND PROCEDURAL CONTEXT

1. Defendant Amanda Nichelle Downs has pleaded guilty to Counts One and Two of a federal indictment that charged her with the Production of Material Depicting the Sexual Exploitation of a Minor, in violation of Title 18, United States Code, Sections 2251(a) and (e) and 2. Per Defendant's plea agreement with the government, Count Four of the Indictment will be dismissed after the imposition of sentence.

1

2.       In Defendant's plea agreement, which was detailed on the record at the change of plea hearing on February 10, 2022, the Defendant stipulated to numerous sentencing enhancements. The parties also stipulated as to the minimum and maximum range of incarceration and a life term of supervised release that this Court should impose, pursuant to Rule 11(c)(1)(C).

3.       The egregious nature of Defendant's offenses is well known to the Court and detailed in the PSIR and herein. The government underscores the abuse endured by Minor A, and the documentation of said abuse by the Defendant, an adult entrusted with her care.

**Legal Context**

4.       The Defendant claims in her Sentencing Memorandum (Doc. No. 119) that the videos of child sexual exploitation that she produced have not been made "commercially available" (page 10). There is simply no way that the Defendant can assure this Court and Minor A that that is true. The Defendant admitted to sharing the videos with co-defendant Jackson Martin and a "female third party friend" (page 7). The Defendant's assurances that these horrific videos have not made it to the internet are naïve and disingenuous. Numerous courts have emphatically expressed the wretched and permanent consequences of child pornography. In *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage.

5.       The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006), tried to downplay his receipt of child pornography by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was not persuaded, reasoning:

> Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id*. (citations omitted); *See United States v. Gonzalez*, 445 F.3d 815 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

6. The district court in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012), imposed a guideline-range sentence on a child pornography defendant. In denying the defendant's challenge to the legitimacy of the child pornography guideline, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

## II. PENALTIES / AVAILABLE SENTENCES

7. Each violation of 18 U.S.C. §§ 2251(a) and (e) and 2 carries a mandatory minimum of fifteen years and maximum of thirty years' incarceration (Counts One and Two–Production of Material Depicting the Sexual Exploitation of a Minor). The Defendant may also be sentenced to a term of supervised release of not less than five years to life at each count. 18 U.S.C. § 3583(k).

### III. ADVISORY GUIDELINE RANGE

8. The United States agrees with the guideline range, including the various enhancements pursuant to U.S.S.G. §2G2.1, as calculated by the Probation Officer in the Presentence Investigative Report ("PSIR"). While the guideline imprisonment range is life, because the statutorily authorized maximum sentences are less than the minimum applicable guideline range of life, the guideline range is 360 months at each count.

9. Further, the United States agrees with the application of Specific Offense Characteristics §2G2.1(b)(1)(A) (minor victim under 12) and §2G2.1(b)(1)(4) (victim toddler). The guideline enhancement for victims under the age of 12 does not consider the exceptional vulnerability of an infant or toddler.

### IV. TITLE 18, UNITED STATES CODE, SECTION 3553(a)

10. This Court must impose a sentence that is reasonable in light of the factors listed in Title 18, United States Code, Section 3355(a) (hereinafter "the Section 3553(a) factors"). In applying the Section 3553(a) factors, the Court must exercise its discretion, while recognizing and responding to all non-frivolous arguments of the parties. *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006). The district court's record should reflect "meaningful consideration of the relevant sentencing factors." *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010); *United States v. Larkin*, 629 F.3d 177, 197 (3d Cir. 2010); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). However, the Court need not discuss each

factor if the record makes clear that the Court took all relevant factors into account in imposing sentence. *United States v. Thornhill*, 759 F.3d 299 (3d Cir. 2014); *Cooper*, *supra*, 437 F.3d 329. In sentencing the Defendant, the district court must articulate on the record that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The Court need not discuss every defense argument, *United States v. Quiles*, 618 F.3d 383, 397 (3d Cir. 2010). Section 3553(a) directs federal courts to impose sentences that are sufficient to account for each of the relevant Section 3553(a) factors but not greater than necessary.

11. When sentencing a defendant, the Courts reasoning must be guided by all of the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background. *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). In pertinent part, these factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law,  and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for -
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...
(5) any pertinent policy statement-
(A) issued by the Sentencing Commission ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

12. As stated, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these

factors to any case involves a balancing of all factors, including consideration of the guidelines, the defendant's criminal conduct and its impact upon the victims in addition to the defendant's background and history.  A singular focus on only the defendant is certainly not an appropriate manner in which to apply the § 3553 factors to this case.

13.     Under the serious and disturbing factors of this case, the Court should impose a sentence of 20 years' imprisonment, followed by lifetime term of supervised release, to sufficiently account for each of the Section 3553(a) factors discussed below.

   a. **The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a))**

14.     Congress has explicitly recognized that child pornography offenses are "crimes of violence".  Congress understood that the children used in the production of child pornography were the primary victims when it passed legislation prohibiting the sexual abuse and exploitation of children through pornographic means.  *United States v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997).  The nature and circumstances of Defendant's offenses are serious, shocking, and indicative of true depravity. Additionally, given the relationship between the Defendant and Minor A, the Defendant's crimes illustrate a disturbing betrayal of trust.

15.     While the offenders of most child pornography offenses do not involve direct contact with the children in the images; here, the Defendant's direct victimization requires a punishment that reflects the seriousness of her offenses and requires a substantial sentence to reflect the seriousness of the offenses, serve the ends of justice, and to protect the community.

16.     As stated, it is incredible to believe that the videos of child sexual exploitation produced by the Defendant are not available on the internet and that Minor A will not live the rest of their life in the fear that others will discover them.  "The 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). Consumers of child pornography, particularly consumers who produce child pornography,

like the Defendant, contribute to the cycle of abuse and are in part responsible for the psychological and physical harm of the children used to produce the images. *United States v. Yeaple*, 605 F. Supp. 85, 86 (M.D. Pa. 1985); *see also New York v. Ferber*, 458 U.S. 747, 759 (1982). Indeed, four members of the Supreme Court deemed child rape to be so serious that death could be imposed as a punishment. *Kennedy v. Louisiana*, 554 U.S. 407, 447-70 (2008).

   **b.  History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))**

   17.   The Defendant is now 31 years old. She has had a far better life than most defendants who find themselves before a federal court. She described her upbringing as normal and free from physical or sexual abuse. The Defendant has no serious health issues and is a high school graduate. Defendant was employed prior to her incarceration. Defendant had the means and ability to be a contributing member of society. Instead, she provided the means and ability for a vulnerable young child in her care to be repeatedly sexually victimized. The Defendant's lack of a criminal history, and cooperation with law enforcement weigh in her favor with regard to this factor. However, the majority of sexual abuse offenders—a category that includes offenders charged with the production of child pornography, which the United States Sentencing Commission deems a "contact" offense—come before the court without prior criminal history or as a Criminal History Category I. *See* U.S. SENTENCING COMM'N, MANDATORY MINIMUM PENALTIES FOR SEX OFFENSES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM, at 2 & fn. 4 and 23 (Jan. 2019) (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf, last accessed May 18, 2020). The Defendant's argument for leniency based on her lack of criminal history is misplaced as the Sentencing Guidelines factor that into the applicable advisory guideline range.

18.     The Defendant's mental health and substance abuse history do not inspire confidence in her rehabilitation.  If anything, these issues should cause the Court to have less confidence in Defendant's ability to be law-abiding when released back into the community. Her history of mental instability is not mitigating.  It renders her a greater danger to the community upon release.

19.     This case presents a situation where this Defendant violated the trust and dignity of a child who was dependent on her for care.  As noted throughout the Defendant's Sentencing Memo, the Defendant repeatedly expressed remorse, but not for the life-long trauma she inflicted on Minor A and the hardship Minor A's guardians are suffering.  The Defendant regrets her incredibly difficult incarceration, how this case has impacted *her* entire life, and how she desires to put the terrible misconduct behind her.  The Defendant inexplicably claims that she videotaped the sexual assault of Minor A while the Defendant and Minor A were *both* being sexually assaulted.  The evidence strongly and definitively contradicts the Defendant's attempt to paint herself as a victim.  The Defendant clearly controlled codefendant Jackson Martin's access to Minor A as evidenced by the text message exchange between the two on November 24, 2018, during which Martin requested the Defendant's permission to drug Minor A and sexually assault the child while the Defendant watched and videotaped.  In response the Defendant replied, "We will see" and later, "Sure".  (Transcript of Change of Plea Hearing, February 10, 2022, page 35). During an interview of the Defendant on November 24, 2019, she lamented the fact that Martin was attracted to Minor A but not to her.

   **c. Seriousness of the Offense, Respect for the Law, Provision of Just Punishment (18 U.S.C. § 3553(a)(2)(A))**

8

20. The Defendant's sentence should reflect the gravity of the offense and the need for retribution such that the punishment fits the crime and the Defendant is punished justly. *See Untied States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose—essentially the "just deserts" concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.

*Id.* (citing *United States v. Pugh*, 515 F.3d 1179, 1188 (11th Cir. 2008) (quoting S. Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59). Because the "punishment should fit the crime, the more serious the criminal conduct is, the greater the need for retribution and the longer the sentence should be. The seriousness of the crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *Id.*

21. This concept is especially applicable in the instant case because "child sex crimes are among the most egregious and despicable of societal and criminal offenses." *Id.*; *see also United States v. Foss*, 501 F.2d 522, 527 (1st Cir. 1974) (cited with approval in the legislative history of Section 3553(a)) ("[T]he view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others . . . This is so even though general deterrence concerns itself not with the individual offender but with the sentence's impact on others.").

22. The facts of the Defendant's offense are well-known to the Court. Here, not only did the Defendant steal the innocence of her child victim—she produced a permanent record of it. The Clearfield Borough Police Department executed the search warrant at the Defendant's and

9

Martin's residence in January of 2019. When Martin was arrested on November 24, 2019, his cell phone was seized and HSI agents discovered that Martin had downloaded the video produced by the Defendant from his Cloud-based storage on November 5, 2019. Despite the Defendant's protestations that she did not make the video commercially available, she introduced it to Martin to live on indefinitely. The Defendant has irrevocably harmed Minor A and has shown little remorse for the damage and violence that she caused. Defendant violated the child's trust and dignity. As the Third Circuit in *United States v. Goff* observed, when Congress passed the Child Pornography Prevention Act of 1996, Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." 501 F.3d 250, 259 (3d Cir. 2007) (citing Child Pornography Prevention Act of 1996 ("CPPA"), Pub. L. 104-208, sec. 121, 110 Stat. 3009-26, reprinted in 18 US.C. § 2251 note at 611); *see also United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006). The Supreme Court explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Digital images can live on indefinitely and with them so does the harm caused to the victims of child pornography. The harm caused by the proliferation of these child sexual abuse images is untold.

23.     The seriousness of Defendant's offenses cannot be overstated. For these reasons, the government's requested sentence of 20 years followed by lifetime supervised release promotes respect for the law and provides just punishment given the serious nature of Defendant's offenses.

  d. **Impact on Victims**

24.     Congress has plainly indicated that "[e]very instance of viewing images of child sexual abuse material represents a ...repetition of their abuse." 18 U.S.C. § 2251 (Historical and Statutory Notes: Child Sexual abuse material Prevention of 2006, Pub.L.No. 109-248, Title V, ' 501, July 27, 2006, 120 Stat. 587, 623 (2006)).  The words of Congress and many courts are echoes of the victims themselves.

25.     The victim impact statements provided by the tender-aged victim and her guardians demonstrate the terrible toll she and they have suffered.  Minor A suffers from Post-Traumatic Stress Disorder and night terrors—conditions that will last a lifetime.

26.     The impact of the Court's sentence, which the Defendant brought on herself, pales in comparison to the impact experienced by the child victim.  The victim's and her guardians' outlook on life has been forever altered; their anguish and pain caused will never dissipate.

27.     Plainly, the negative consequences that the Defendant will experience from her conviction pale in comparison to the everlasting and devastating impact on this most innocent victim.  Despite the Defendant's claims in her Sentencing Memorandum, she is not the victim here—there is no evidence to suggest that she was being sexually assaulted while she was videotaping the rape of the child victim.  Her expressed remorse focuses exclusively herself—her life, her loss, and her incredibly difficult incarceration—consequences that are the foreseeable results of her own conduct.  Meanwhile, the victim and her guardians continue to suffer immensely every time others access and view the recordings and photos of Minor A's rape produced by the Defendant:

> Victims depicted in child sexual abuse material consistently indicate that the continuing dissemination and collection of their abuse imagery is much more disturbing to them than the underlying abuse ever was. Their point is simple. The abuse ended at some point. The viewing and collection of the material memorializing their abuse never ends. Its continued consumption by depraved individuals is a constant and unceasing reminder that they can never be fully free

of those wishing to receive gratification from their victimization.

 e. **Deterrence of Others (18 U.S.C. § 3553(a)(2)(B))**

  28. Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.")). In fact, courts have placed a high importance on the need for deterrence in cases of hands-on abuse of children due to the "heightened concern in sex offense cases with an offender's potential for recidivism." *United States v. Armendariz*, 451 F.3d 352 (5th Cir. 2006). As the *Armendariz* court noted: "[e]specially in the case of a sex crime—and particularly for one involving a child—the need for deterrence, protecting the public, and providing the offender with necessary correctional treatment are highly relevant factors that should [be] effectuated in the sentence . . . imposed." *Id.* at 362.

  29. In fact, the Sixth Circuit has reversed a district court that failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012). The district court stated "general deterrence ... will have little [if] anything to do with this particular case." *Id.* The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]"

*Id.* (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

30. The Court is in a position to send a clear message to the community that those who abuse children will pay a very heavy price. The goal of deterrence is realized if even one child predator is deterred. A sentence of 20 years in prison and a lifetime term of supervised release will accomplish this goal.

### f. Protection of the Public from Further Crimes of the Defendant (18 U.S.C. § 3553(a)(2)(C))

31. This factor requires the Court to consider the incapacitation or specific deterrence of the Defendant. *See Irey*, 612 F.3d at 1210. As the Defendant not only lacks the ability to protect a child in her care, but also has the propensity to participate in and document the sexual exploitation of that child, the Court must protect Minor A and the community at large from the Defendant for as long as possible. Every day that the Defendant is removed from society is a day that the children of this community will be safer. Thus, a sentence of 20 years' imprisonment is sufficient, but not greater than necessary to satisfy this factor. A sentence of 17 years will not, because, after 17 years, the victim will still lack the maturity necessary to rebuke the Defendant's sympathetic pleas requesting a reconnection, even if there exists a no-contact order.

### g. Need to Avoid Sentencing Disparity (18 U.S.C. § 3553(a)(6))

32. The parties' recommended sentence range is within the guidelines and is not unreasonable, and certainly would not be anomalous in the context of production of child pornography and possession offenses in federal court.

### h. Restitution

33. Restitution is not applicable to the Defendant.

## V. IMPOSITION OF SENTENCE

34. As noted in the PSIR, the Defendant has an open state case for the rape of Minor A

and related charges. If convicted of this offense, Defendant may face an additional term of imprisonment within the Commonwealth of Pennsylvania. The United States is not a party to the resolution of those charges and requests that the Defendant serve the sentence imposed by this Court in the Federal Bureau of Prisons as designated.

## VI. CONCLUSION

35. For all of the foregoing reasons, and in consideration of the facts and circumstances of this case, the government respectfully requests that the Court sentence the Defendant to 20 years' imprisonment, followed by a lifetime term of supervised release. In light of the seriousness of the Defendant's offenses and the irrevocable harm she inflicted on Minor A by documenting the rape and sexual abuse of Minor A, when the Court considers all of the factors enumerated in 18 U.S.C. § 3553(a), it should conclude that the government's requested sentence is warranted, provides just punishment, and is not greater than necessary to address the Defendant's crimes and the factors at 18 U.S.C. § 3553(a).

Respectfully submitted,

CINDY K. CHUNG
United States Attorney


*/s/ Maureen Sheehan-Balchon*
MAUREEN SHEEHAN-BALCHON
Assistant U.S. Attorney
PA ID No. 78059